DOVE *v.* ALPENA HIDE & LEATHER CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—IN-
FECTION—EVIDENCE.

In proceedings for compensation under the workmen's
compensation act for the death of a tannery workman,
employed in unloading hides, alleged to be due to septic
infection from dust from the hides, the evidence of a phy-
sician that hides are dead animal matter; that, as a gen-
eral rule, all dead animal matter contains infection and
that hides are no exception, tends to prove that dust aris-
ing from the hides contained infection.

2. SAME.

If it was established to the satisfaction of the commission
that hides are animal matter, that all dead animal mat-
ter contains infection and that hides are no exception,
such facts would justify an inference that deceased be-
came infected by handling the hides—that the septic
germ entered his body through the respiratory organs and
first found lodgment in the throat.

3. SAME.

A tannery workman employed in unloading hides suffers
an accident causing his death where by chance septic
germs in the dust from the hides are taken into his
respiratory organs and carried into his system, an un-
usual occurrence in work at which he is employed, and
death follows.[1]

BROOKE and STEERE, dissenting.

Certiorari to Industrial Accident Board. Submitted
June 6, 1917. (Docket No. 3.) Decided September
27, 1917.

Louise A. Dove presented her claim for compensa-
tion against the Alpena Hide & Leather Company for
the accidental death of her husband in defendant's
employ. From an order awarding compensation, de-

---

[1] On constitutionality and effect of workmen's compensation
acts, generally, see comprehensive note in L. R. A. 1916A, 23;
L. R. A. 1917D, 80.

fendant and the Ætna Life Insurance Company, insurer, bring certiorari.   Affirmed.

*C. W. & W. S. Foster,* for appellants.

*Joseph H. Cobb,* for appellee.

BIRD, J.   Plaintiff is the widow of Leonard Dove, who was employed in and around the tannery of the first-named defendant.   On March 30, 1915, he, with other employees, was engaged in unloading a car of hides, which had been received from South America. They were sun-dried and folded with the hair inside. They were thrown into the hide house from the car, and the deceased assisted in carrying and piling them. On April 1st he noticed a swelling on his neck under the right jaw.   On April 2d, when he came to work, it was observed by the foreman, Mr. Good.   After questioning him concerning it, Mr. Good advised him to see a physician.   From that time on he grew worse rapidly, and on the morning of April 4th he died. The cause of death was given by the attending physician as "septic infection and heart trouble."   A death award was made by an arbitration committee, and subsequently approved by the board, on the theory that the deceased became infected from the dust arising from the hides.

The defendants insist that the finding of the board is not sustained by the testimony.   The testimony has been carefully examined, and we think it tends to establish the following facts:

(*a*)  That the cause of death was "septic infection." (*b*)  That dust arose from the handling of the hides and that the ventilation in the hide house was very poor.   (*c*)  That septic infection could be taken into the body by means of inhalation.   (*d*)  That the throat of deceased was badly inflamed.   (*e*)  That the infection which caused death was contracted from without. (*f*)  That if the dust contained infection the deceased could have contracted it by working on the hides in

the poorly ventilated room. (*g*) That the dust arising from the hides contained infection.

It is strenuously insisted by defendants' counsel that there is no proof that the dust contained infection. We think the testimony of Dr. Dunlop tends to support the claim that it did. He testified in part as follows:

"*Q.* Do you know, Doctor, of your own knowledge, whether or not they (hides) contain germ diseases?

"*A.* Hides are dead animal matter, and they are the same as other dead animal matter. Because they are hides makes no difference.

"*Q.* Then, as I understand it, all dead animal matter contains infection as a general proposition?

"*A.* Yes.

"*Q.* And these hides are no exception?

"*A.* No."

These propositions, if established in the minds of the commission, would justify an inference that the deceased became infected by handling the hides—that the septic germ entered his body through the respiratory organs and first found lodgment in his throat. *Blaess* v. *Dolph*, 195 Mich. 137 (161 N. W. 885).

Counsel inquire where the accident is which led to his death. The accidental feature of the case is that by chance the septic germ or germs were taken up by his respiratory organs and carried into his system, an occurrence which the testimony shows probably did happen, but which was unusual in the work at which he was engaged.

The conclusions of the board are affirmed.

KUHN, C. J., and STONE, MOORE, and FELLOWS, JJ., concurred with BIRD, J.

BROOKE, J. (*dissenting*). In my opinion there is no evidence of an accident.

STEERE, J., concurred with BROOKE, J. OSTRANDER, J., did not sit.