BARNHILL, J., dissenting.
STACY, C. J., and WINBORNE, J., concur in dissent.
This is an action brought by plaintiff against defendant, under the N.C. Workmen's Compensation Act (Laws 1929, ch. 120; N.C. Code, 1939 [Michie], ch. 133-A).
The hearing Commissioner found certain facts and made an award as follows:
"The Commissioner finds as a fact from the evidence and admissions that both the plaintiff and the defendant are bound by the provisions of the North Carolina Workmen's Compensation Act, the defendant having five or more employees; and that the defendant is both a governmental and State Agency; and that the plaintiff's average monthly wage was $75.00. The Commissioner finds as a fact that the Unemployment Compensation Commission has its offices over the Sir Walter Garage on Fayetteville Street, in the city of Raleigh, and that the space occupied by the Unemployment Compensation Commission is inadequate for the work to be done and for the several hundred employees that are required to occupy it. The Commission further finds as a fact that among these numerous employees for several weeks prior to 1 February, 1939, was a young man, by the name of Frank Tyson, and the plaintiff, Neill MacRae, both of whom were young men; that during the month of February, 1939, these two young men were placed across a very narrow table or desk to do their work; and the Commissioner further finds that during the month of February, 1939, the said Frank Tyson was suffering from an active case of pulmonary tuberculosis, and that they had to work in such close proximity to each other that when the said Frank Tyson coughed — which he did frequently — the vapors and sprays from his mouth would fly into the face of the plaintiff, Neill MacRae; and that on one occasion, on or about the 15th day of February, 1939, that the said Frank Tyson coughed while suffering with an active pulmonary tuberculosis and that some of the sputum from his cough flew into the mouth of the plaintiff, Neill MacRae; that thereafter, on or about the 26th day of February, 1939, the said Frank Tyson became disabled on *Page 771 
account of his pulmonary tuberculosis, that he was carried to one of the tubercular sanatoriums in the State where he is now undergoing treatment for said condition.
"The Commissioner further finds that prior to the association of the plaintiff, Neill MacRae, with the said Frank Tyson, he was not known to have had any tuberculosis; that after the said Frank Tyson was removed from the employment of the Unemployment Compensation Commission, the plaintiff, Neill MacRae, continued to work on until some time in the latter part of April, or the first part of May he began to notice night sweats and have sleepless nights; and in the early part of June, upon examination, he was found to be suffering with tuberculosis. The Commissioner finds as a fact from the evidence that from the time the plaintiff was exposed to tuberculosis from Frank Tyson until the latter part of April or the first part of May was ample time for tuberculosis to develop from the inception of the tubercular germs. The Commissioner further finds as a fact that the reception of spray from the coughs of Tyson — who was known to be infected with tuberculosis — and especially the sputum that went into the mouth of the plaintiff in this case was ample exposure to pass the germs from one person to another.
"The Commissioner further finds as a fact that the plaintiff, Neill MacRae, became totally disabled to work on June 10, 1939, and is still totally disabled to work on account of tuberculosis. The Commissioner finds as a fact from the evidence and the greater weight of the evidence that the reception of the sputum sprays and the sputum itself from the mouth of Tyson into the face and mouth of the plaintiff was the cause of the development of the tuberculosis in the plaintiff; and, the Commissioner further finds as a fact that the reception of said spray and sputum flying through the air, under the circumstances as described in the evidence in this case, amounted to an injury by accident.
"Therefore, the Commissioner finds as a fact that the plaintiff received an injury by accident arising out of and in the course of his employment for the defendant, and that as a result of said injury he developed tuberculosis; and that he has been totally disabled from carrying on any labor on account of said condition since June 10, 1939; that he is in need of hospital and medical care. . . . Therefore, let an award issue directing the defendants to pay to the plaintiff compensation for total disability from June 10, 1939, until the time of this hearing based upon an average wage of $75.00; and, if the plaintiff and the defendants cannot agree on the period of disability thereafter then the case will be reset for a further hearing for that purpose.
"Defendants will tender to the plaintiff hospital and medical treatment such as his condition may require and pay the bills therefor when approved by this Commission. Defendants will pay the costs of the hearing. *Page 772 
Each of the plaintiff's doctors who testified at the hearing is allowed a fee of $10.00. Buren Jurney, Commissioner."
To the findings of fact and conclusions of law of the hearing Commissioner, defendant excepted, assigned error and appealed to the Full Commission. The Full Commission affirmed the findings of fact and conclusions of law and award of the hearing Commissioner.
In the judgment of the Full Commission, in part, is as follows: "The defendant contends that the plaintiff is disabled as the result of diseased condition and that this disease is not one of those listed under section 50 1/2 (b) of the Compensation Law, and further plead section 50 1/2 (a), which reads, in part: `The disablement or death of an employee resulting from an occupational disease described in paragraph (b) of this section shall be treated as the happenings of an injury by accident within the meaning of the North Carolina Workmen's Compensation Act and the procedure and practice and compensation and other benefits provided by said act shall apply in all such cases except as hereinafter otherwise provided. The word "accident" as used in the Workmen's Compensation Act, shall not be construed to mean a series of events in employment, of a similar or like nature, occurring regularly, continuously or at frequent intervals in the course of such employment, over extended periods of time, whether such events may or may not be attributable to fault of the employer, and disease attributable to such causes shall be compensable only if culminating in an occupational disease mentioned in and compensable under this act. . . .'" Laws 1935, ch. 123, sec. 1.
To the foregoing opinion of the Full Commission, the defendant excepted, assigned error and appealed to the Superior Court. The judgment of the Superior Court is as follows:
"This cause coming on to be heard before his Honor, Clawson L. Williams, Judge presiding, at the January, 1940, Term of Wake County Superior Court, by consent of the parties upon appeal of the defendants from the award, opinion and findings of fact of the Full Industrial Commission of North Carolina, and upon a record certified to this court by the Industrial Commission, and after argument of counsel and consideration of the evidence and record herein, and it appearing to the court that the findings of fact, award, and opinion of the Full Industrial Commission is amply supported by competent evidence, that plaintiff's disability and disease complained of herein resulted naturally and unavoidably from an accident arising out of and in the course of plaintiff's employment by defendant, and that defendants' questions to medical experts as appear in the record were properly overruled by the Industrial Commission:
"It is therefore considered, ordered and adjudged and decreed that the findings of fact, award, and conclusions of law of the North Carolina *Page 773 
Industrial Commission as set forth in the opinion of said Commission appearing in the record, be and the same are hereby in all respects approved and affirmed; and that plaintiff have and recorder of the defendant the amounts and compensation as set forth in the award of the Industrial Commission, together with the costs of these proceedings of this action; and it is further ordered that the costs of these proceedings to the plaintiff, including reasonable attorneys' fees to be determined by the Industrial Commission, shall be paid by the defendant as part of the bill of costs herein, in accordance with section 8081 (rrr) of the North Carolina Workmen's Compensation Act. This 24th day of January, 1940. Clawson L. Williams, Judge presiding."
To the foregoing judgment, findings and ruling of the court below, the defendant excepted, assigned error and appealed to the Supreme Court.
Dr. J. J. Combs, admitted to be an expert, testified, in part: "I examined MacRae on July 7, 1939, as the result of my findings and examination my conclusion is that his disability is pulmonary tuberculosis. It is my opinion he has tuberculosis. . . . I have found in my experience that a person exposed, say in February, could break down with tuberculosis in two or three months after that. If he was exposed to tuberculosis and had not been exposed until about the middle of February, then the condition you found him with would not be inconsistent with that exposure. I might cite a case. A patient was admitted to the sanatorium about March 15, 1938, a colored man, for advanced tuberculosis. His wife was brought in subsequent to his admission and fluoroscoped and I could find no evidence of tuberculosis. The last of May, 1938, the patient came in with far advanced, rapidly advancing tuberculosis. Now, I attributed it to the exposure to her husband. Neill's condition could be attributed to exposure about the middle of February."
The following question was asked Dr. Combs: "Q. I'll ask you a hypothetical question, Doctor. Doctor, if the Commission should find as a fact from the evidence presented in this case that Neill MacRae was a man about 22 years of age, normal health and habits, in good physical condition throughout his life, weighing on an average of about 145 pounds, that in connection with his employment in the office of the Unemployment Compensation Commission in Raleigh he worked during part of the time upon various occasions with one Frank Tyson who developed symptoms of tuberculosis in the form of coughing and other symptoms during February, 1939, and by examination about February 28th, March 1st, 2nd and 3rd, 1939, Frank Tyson was found to have a very highly active case of pulmonary tuberculosis and his sputum at those times contained tubercular bacilli, that about the middle of February, *Page 774 
1939, while Neill MacRae was working with said Tyson in the course of said employment, said Tyson unexpectedly and involuntarily coughed direct into the face of Neill MacRae, expectorating sprays or sputum into MacRae's mouth, that about the latter part of April and the first part of May, 1939, Neill MacRae began to feel fatigue easily, he experienced night sweats during the first part of May at intervals, which continued at more frequent intervals during May, 1939; that MacRae experienced some fever and high temperature during May and developed a nonproductive cough in the first part of May, continuing and increasing in severity during that month; that he was found to have pulmonary tuberculosis by examination about June 5, 1939, which now disables him, and which is of the same type, and nature and character of the disease from which Tyson was found to be suffering, would you or do you have an opinion satisfactory to yourself based upon such findings, with no history of exposure of MacRae to other persons as to whether or not Neill MacRae's present disability and disease is attributable and resulted naturally and unavoidably from Tyson's coughing into MacRae's face as described? Q. Do you have an opinion? Ans.: Yes, sir, my opinion is that Mr. MacRae's present condition, chronic pulmonary tuberculosis, is attributable to his exposure to Mr. Frank Tyson while at work in view of the fact that there is no other history of contact. Q. And as described in the question? Ans.: Yes, sir."
Dr. Earl W. Brian, an expert, testified, as did Dr. Combs, to a like hypothetical question: "Q. Do you have an opinion? Ans.: Yes, sir. Q. What is your opinion? Ans.: My opinion is that MacRae contracted his tuberculosis from Frank Tyson as a result of his working in close proximity with Tyson. . . . Q. Do you think the sputum that went into his mouth and the sprays that went into his face caused it? Ans.: You are trying to make the point that this one particular cough produced the disease in MacRae. Q. Based upon those findings and remembering the facts, I am trying to clarify it. Ans.: Yes, sir, I think he got his tuberculosis as a result of Tyson's coughing in his face or near enough for him to inhale the organisms. . . . Q. What effect does the lack of ventilation or air flow or flow of air current in a room in which a tubercular patient is present with other healthy persons have in the transmittal of the disease germs of tuberculosis from one person to another. Ans.: The course given to people in a room, one infected with tuberculosis and the other free, the infected person coughing, if the air is being continually swept away there is much less likelihood of the uninfected person developing the disease than if the air is, shall we say stagnant, not being swept away, certainly the presence of still air would be in favor of developing the disease in the uninfected person."
The hypothetical questions were based on the examination of Neill *Page 775 
MacRae by the above physicians, also on their testimony, and other evidence. The testimony of Neill MacRae was corroborated by Mrs. Ellen MacRae, Mrs. Thomas O'Berry, Mrs. Alice Smith and Mrs. Irene S. Burns. The main exceptions and assignments of error made by defendant and other necessary facts will be set forth in the opinion.
The question involved: Does the record contain any competent evidence sufficient to sustain the finding of the Full Commission that the plaintiff received an injury by accident arising out of and in the course of his employment by defendant? We think so.
N.C. Code, 1939 (Michie), sec. 8081 (i), subsec. (f), is as follows: "`Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."
We think plaintiff's disease is the result of an injury by accident within the meaning of subsection (f), supra, of the act. It is not an occupational disease. The occupational disease section of the Compensation Act, Laws 1935, ch. 123, sec. 50 1/2 (a), applies only to diseases which result from the cumulative effect of long, continued exposure to risks and conditions inherent and usual in the nature of the employment.
The language of the occupational disease section of the act, sec. 50 1/2 (a), is heretofore set forth in the opinion of the Full Commission, as relied on by defendant to defeat plaintiff's claim. We have gone into the question of occupational disease in the recent case of Blassingame v.Asbestos Co., ante, 223. The hearing Commissioner found, and there was competent evidence to sustain the findings: "The Commissioner finds as a fact from the evidence and the greater weight of the evidence that the reception of the sputum sprays and the sputum itself from the mouth of Tyson into the face and mouth of the plaintiff was the cause of the development of the tuberculosis in the plaintiff; and, the Commissioner further finds as a fact that the reception of said spray and sputum flying through the air, under the circumstances as described in the evidence in this case, amounted to an injury by accident." This finding was affirmed by the Full Commission, who also found: "In the instant case, the Commission is of the opinion that the coughing and the sputum accidentally hitting the plaintiff and entering his mouth constitutes an injury by accident."
In Smith v. Creamery Co., ante, 468, the evidence tended to show that the injured employee was employed to deliver milk, that in delivering *Page 776 
milk to a cafe in the regular course of his employment he attempted to lift a box containing chipped ice, and weighing from 125 to 150 pounds, out of a large box in order to place the milk he was delivering beneath it, that while lifting the box he felt a sharp pain and that it was later determined that he had suffered a hernia. The clear and well written decision by Mr.Justice Seawell says: "The Court certainly does not intend to say that compensation may be awarded for an injury which is not the result of fortuitous circumstances or for an injury which is but the natural and probable result of the employment. We only go so far as to hold that in considering the constituent element of `accident' it is competent to take into consideration the sudden and unexpected rupture of the parts supporting the viscera, as happened to the plaintiff, under the strain of lifting, as part of the fortuitous circumstances making up the accident. It was not, as in Slade v. Hosiery Mills, supra (209 N.C. 823), and Neely v.Statesville, supra (212 N.C. 365), a natural and probable result of the work being done, and the facts of the case justified the finding on the part of the Commission, as affirmed by the court, that plaintiff sustained his injury by accident arising out of and in the course of his employment."
We think the above case is analogous to the present action. It was in evidence that Frank Tyson, who had a very highly active case of pulmonary tuberculosis and his sputum at those times contained tubercular bacilli, about the middle of February, while Neill MacRae was working with said Tyson in the course of said employment, said Tyson unexpectedly and involuntarily coughed directly into the face of Neill MacRae, expectorating sprays or sputum into MacRae's mouth. Almost immediately thereafter the plaintiff, a strong, healthy young man, commenced to have bodily fatigue and went down and down, and on 5 June of that year was found to have pulmonary tuberculosis.
Dr. Brian testified, in part: "Q. Do you have an opinion? Ans.: Yes, sir. Q. What is your opinion? Ans.: My opinion is that MacRae contracted his tuberculosis from Frank Tyson as a result of his working in close proximity with Tyson. . . . At any time any patient is coughing up tuberculosis bacilli, another patient may get the disease from him. . . . I'd classify tuberculosis as a communicable infectious disease. It is communicated from one person to another by physical conditions. The reception into the body of sputum containing tubercular bacilli is the most favorable medium of transmitting the disease."
Plaintiff's tubercular disability is directly attributable to his infection when Tyson involuntarily and unexpectedly coughed spray and sputum into plaintiff's face and mouth. Such coughing was untoward, unfortunate and unusual in its proximity to and its effect upon plaintiff. It was unintentional and the result of Tyson's negligent failure or inability *Page 777 
to protect himself therefrom because both hands were engaged in holding a tray. Yet, by the simple act of placing a handkerchief or hand over his mouth, Tyson might have prevented the spread of the spray and sputum. This overt, positive action is sufficient to satisfy the definition of accident. Injuries resulting from either willful or negligent actions of a fellow employee constitute injuries by accident. Conrad v. Foundry Co.,198 N.C. 723; Chambers v. Oil Co., 199 N.C. 28; Tscheiller v. Weaving Co.,214 N.C. 449.
The Court, in Barron v. Texas Employers Insurance Assn., 36 S.W.2d 464 (Texas, 1931), held that exposure of a workman to gas emitted by an oil well "in quantities somewhat larger than the gas to which he had previously been exposed, constituted an injury by accident." The workman became weak and nauseated from the exposure and suffered pains in his lungs, and later he was found to have tuberculosis. In the opinion of the Court it was said, at p. 465: "A disease acquired in the usual and ordinary course of employment which common experience has recognized to be incidental thereto is an occupational disease and not within the contemplation of the Workmen's Compensation Act; but an injury resulting from the accident is something which occurs unexpectedly and not in the natural course of events. It is one which may possibly be prevented by the exercise of due care and caution on the part of the employer. Schneider on Compensation Laws, p. 419, sec. 223; Gay v. Hocking Coal Co.,184 Iowa 949, 169 N.W. 360." . . . Further in the opinion (at p. 467), "A disease contracted as a direct result of unusual conditions connected with the work and not as an ordinary or reasonably to-be-anticipated result of pursuing the same should be considered an accidental injury."
To the same effect is Aetna Life v. Harris, 83 S.W.2d 1087 (Texas, 1935).
In Dove v. Alpena Leather Co., 164 N.W. 253 (254), (1917), the Michigan Court upheld an award where the plaintiff became infected with a disease as the result of inhaling germs while handling hides in a poorly ventilated room. In the opinion it is said: "The accidental feature of this case is that by chance the septic germ or germs were taken into the respiratory organs and carried into his system, which . . . was unusual in the work at which he was engaged." Connelly v. Furniture Co.,240 N.Y., 83, 147 N.E. 366, 39 A.L.R., 867; Claess v. Dolph, 161 N.W. 885
(Mich.).
We think the exceptions and assignments of error made by defendants to the evidence are not material. In Tindall v. Furniture Co., 216 N.C. 306
(310), it was said by Devin, J., for the Court: "In accord with the provisions of the Workmen's Compensation Act, it has been established by the uniform decisions of this Court that the findings of *Page 778 
fact made by the Industrial Commission, when supported by competent evidence, must be held conclusive on appeal, and not subject to review.Lassiter v. Telephone Co., 215 N.C. 227; Porter v. Noland Co., 215 N.C. 724;Plyler v. Country Club, 214 N.C. 453. And the application of the rule of conclusiveness of the findings of the Industrial Commission as to controverted issues of fact, when based on competent evidence, is not defeated by the fact that some of the testimony offered may be objectionable under the technical rules of evidence appertaining to courts of general jurisdiction, as was pointed out in Maley v. Furniture Co.,214 N.C. 589, and Consolidated Edison Co. v. National Labor Relations Board,305 U.S. 197."
We think the hypothetical questions within the rule frequently approved by this Court; they "assume facts which the evidence directly, fairly and reasonably tends to establish, and were competent. The probative force was for the Commission." Blassingame v. Asbestos Co., ante, 223 (236).
We think that plaintiff's disease was proximately produced by infection from germs transmitted him in droplets of spray and sputum coughed up and expectorated into his face and mouth by a negligent fellow employee in the course of his employment by defendant; that the unusual circumstances and conditions under which said injury was produced constituted an accident arising out of his employment; and that the evidence fully supports the Commission's findings and award. It is well settled law that the Commission could base its findings of fact on circumstantial as well as direct evidence.
In II Schneider, Workmen's Compensation Law (2d Ed.), part sec. 554, at pp. 2002-3, we find: "`The courts may not interfere with the findings of fact, made by the Industrial Commissioner, when these are supported by evidence, even though it may be thought to be error.' `The rule . . . is well settled to the effect that, if in any reasonable view of the evidence it will support, either directly or indirectly, or by fair inference, the findings made by the Commission, they must be regarded as conclusive' (citing a wealth of authorities). Courts cannot demand the same precision in the finding of Commission as otherwise might be if the members were required to be learned in the law.'" This statement was quoted with approval in Blassingame v. Asbestos Co., supra (233-4).
For the reasons given, the judgment of the court below is
Affirmed.