MRS. JOHN M. CLONINGER, DIVORCED WIFE AND GUARDIAN OF MILTON CLONINGER AND DAINES CLONINGER, MINOR CHILDREN OF JOHN M. CLONINGER, DECEASED (EMPLOYEE), v. AMBROSIA CAKE BAKERY COMPANY (EMPLOYER) AND LIBERTY MUTUAL INSURANCE COMPANY (CARRIER).

(Filed 19 June, 1940.)

1. Master and Servant § 55d—

The finding of the Industrial Commission that deceased was an employee of defendant at the time of his fatal injury is conclusive on the courts if supported by competent evidence, notwithstanding that the Court might have reached a different conclusion if it had been the fact finding body.

2. Master and Servant § 39b—Evidence held sufficient to support finding that deceased was an employee of defendant and not a jobber.

Deceased, at the time of his fatal injury, was engaged in selling the products of defendant. Letters to him from defendant's home office were introduced in evidence which contained instructions for the collection of an account which, as an exception, had been charged directly to the purchaser by defendant, and also a letter stating that defendant would fill his orders C.O.D. without deducting commissions and at the end of the week would then figure his commissions and send him check therefor plus any difference "to make up the $25.00 salary" and also stating that a certain sum was due for social security and asking for his social security number. *Held:* The evidence, with other evidence in the case, *is held* sufficient to support the finding of the Industrial Commission that the deceased was an employee of the defendant, and not a jobber or independent contractor.

WINBORNE, J., dissenting.

STACY, C. J., and BARNHILL, J., concur in dissent.

APPEAL by defendants from *Stevens, J.,* at February Term, 1940, of ROBESON. Affirmed.

This is an action brought by plaintiffs against defendants under the N. C. Workmen's Compensation Act (Laws 1929, ch. 120; N. C. Code, 1939 [Michie], sec. 133-A).

The hearing Commissioner found certain facts and conclusions of law and made an award in favor of plaintiffs. This was sustained by the Full Commission and the court below. The plaintiffs' deceased, John M. Cloninger, died 3 September, 1937, as a result of injuries in an automobile collision, about 11 p.m., 31 August, 1937, while engaged in the business of selling and delivering cakes for defendant Ambrosia Cake Bakery Company, of Greensboro, N. C.

The defendants contend that the plaintiffs' deceased was a "jobber" or distributor and as such he was not an employee. Upon all of the competent evidence the Commission made the following findings of fact:

"1. That the Ambrosia Cake Bakery, Inc., was incorporated under the laws of North Carolina, and doing business in North Carolina.

"2. That said bakery had five or more employees; had accepted the Compensation Law; and purchased compensation insurance from the Liberty Mutual Insurance Company.

"3. That said bakery was engaged in the business of manufacturing and distributing cakes from its Greensboro headquarters.

"4. That the Ambrosia Cake Bakery, Inc., was a closed corporation with E. P. Colby as president, and with said E. P. Colby, his brother W. J. Colby and R. T. Griffin the sole and only stockholders.

"5. That said E. P. Colby was president of two other similar baking corporations with headquarters in Jacksonville, Florida, and Birmingham, Alabama.

"6. That the plaintiffs' deceased, John M. Cloninger, was formerly employed by the Jacksonville baking corporation for a period of approximately 10 years; that said employment terminated in June, 1937.

"7. That said plaintiffs' deceased and E. P. Colby, president, were close personal friends; that said Colby arranged for said plaintiffs' deceased to come to North Carolina to sell cakes in a territory to be selected by said deceased subject to approval of the Greensboro office.

"8. That said deceased came to North Carolina in July, 1937, and after visiting several parts of North Carolina, he selected three counties, including Cumberland and Robeson.

"9. That said deceased, before leaving Florida, arranged to trade his private passenger car for a delivery truck which was used in connection with selling Ambrosia cakes in North Carolina.

"10. That said deceased entered into an agreement with the Ambrosia Cake Bakery, Inc., of North Carolina, whereby he was to sell cakes for a commission of 22%.

"11. That said deceased also sold pies for a Chattanooga, Tenn., firm.

"12. That said deceased's principal business was selling Ambrosia cakes.

"13. That said Ambrosia Bakery did not object to the deceased selling for other firms.

"14. That said bakery sold to the deceased on a C.O.D. basis but frequently made exceptions and permitted the shipments to go through and charge them.

"15. That orders were taken on tickets furnished by said bakery according to their instructions.

"16. That E. P. Colby arranged for Cloninger to have a drawing account or an advance up to $25.00 per week, less Cloninger's commissions until such times as Cloninger's commissions totaled $25.00 per week; that Cloninger's commissions totaled less than $25.00 per week except the full week immediately preceding Cloninger's death.

"17. That said bakery made certain payments upon Cloninger's truck account, his public liability insurance, and purchased business licenses in several towns in Cloninger's territory; that the city of Fayetteville license was bought in the name of 'Ambrosia Cake Bakery, Inc., Greensboro, N. C., Box 210,' 'to engage in business of wholesale and retail bakery products'; that the town of Lumberton license was 'granted to Ambrosia Cake Bakery, Inc., for the privilege . . . delivery of bakery products from truck.'

"18. That in shipping merchandise to Cloninger C.O.D., the bakery made an exception in the case of the Hope Mills canteen account; that said account was charged direct by the bakery to Hope Mills; that Cloninger took the orders and delivered said merchandise to Hope Mills and received the usual 22% commission.

"19. That Graham A. Armisted, sales manager for the said bakery, made two trips to Hope Mills with the deceased, Cloninger, to assist in securing the account of Hope Mills and approved arrangements.

"20. That said bakery gave instructions in letters to the deceased, Cloninger, from time to time, to wit:

"                                        " 'August 26, 1937.

" 'MR. JACK CLONINGER,
    Fayetteville, N. C.

" 'DEAR JACK: You will help us out considerably if you can arrange to get your order in one day sooner. The reason for this is that your cake goes forward on the noon train and we do not always have your

complete order baked up, then again on these damp days it is hard to get your icing dried in time. We will appreciate a line from you letting us know if this can be arranged. Please get Hope Mill check in as we don't want Jacksonville to criticise our collections.

Very truly yours,
AMBROSIA CAKE BAKERY, INC.,
By DICK, *Manager.*'

" 'August 24, 1937.

" 'MR. JACK CLONINGER,
Fayetteville, N. C.

" 'DEAR JACK: We are enclosing a corrected statement on the Hope Mills account. Sorry you didn't let us know the trouble at once so that there would not have been so much delay. Would appreciate it if you would get check in at once.

Very truly yours,
AMBROSIA CAKE BAKERY, INC.,
By VERNON, *Office Manager.*'

" 'August 21, 1937.

" 'MR. JACK CLONINGER,
Fayetteville, N. C.

" 'DEAR JACK: We have not received a check from the Hope Mills as yet in payment of the statement which we mailed to you on August 15th as per your instructions. This is already one week past due. Kindly call on the Hope Mills, if you have not already done so, present this matter and mail the check to us at once. The amount of this statement is $38.51.

Very truly yours,
AMBROSIA CAKE BAKERY, INC.,
By R. T. GRIFFIN, *Manager.*'

" 'MR. JACK CLONINGER,
c/o General Delivery,
Fayetteville, N. C.

" 'DEAR JACK: Just received communication from the town of Fairmont asking us to pay a license of $10.00. This will be good until June 1, 1938. Do you think we should pay this license? If you do let us know and we will send them a check at once.

Very truly yours,
AMBROSIA CAKE BAKERY, INC.,
By DICK, *Manager.*'

"Excerpt from July 23, 1937, letter of President E. P. Colby to the deceased, Cloninger: 'I don't want you to quit under any circumstances without first letting me know the reason.'

"21. That the plaintiffs' deceased, John M. Cloninger, was an employee of the Ambrosia Cake Bakery, Inc.; that as such employee he sustained an injury by accident arising out of and in the course of his employment with said bakery on the night of August 31, 1937, about 11 o'clock, when his truck collided with another vehicle on the highway between Lumberton and Fayetteville; that said injury by accident was the proximate cause of his death September 3, 1937.

"22. That said Cloninger was not an independent agent or distributor.

"23. That Cloninger's average weekly wage was $25.00.

"24. That Cloninger left wholly dependent upon him at the time of his injury and death by accident, two minor sons, to wit: Daines Rutherford Cloninger, age 15, and John Milton Cloninger, Jr., age 13; that said sons were the only persons wholly dependent upon said deceased.

"25. That the widow, Mrs. John Cloninger, was divorced some time prior to the accident.

"26. That the widow, Mrs. John M. Cloninger, is the legal guardian for the said two dependent minor children.

"Conclusions of law: The defendants offered parol evidence explaining such terms in the written correspondence as 'salary' and 'Social Security' number; that plaintiffs' deceased had been a valued employee of the Florida corporation for several years and because of certain conditions, which were unexplained, Cloninger was discharged in Florida, but permitted to represent the North Carolina corporation in this State as a jobber, or distributor; that the Florida official desired and attempted to withhold from the Greensboro office the circumstances of the deceased's discharge in Florida so that the deceased could have an unprejudiced new start in life. While the expressed motives of the Florida management were ideal, the written evidence originating in the Greensboro office tended to treat the deceased as another employee; therefore, the Commission concludes as a matter of law that Cloninger was an employee.

"Award: The Commission awards and the defendants will pay Mrs. John M. Cloninger, as guardian of the two minor dependent children, Daines Rutherford Cloninger and John Milton Cloninger, Jr., share and share alike, compensation at the rate of $15.00 per week for 350 weeks, plus payment of burial expenses to the proper parties, not exceeding $200.00 and payment of all hospital, nursing, and medical expense after bills have been submitted to and approved by the Industrial Commission. The defendants will pay the costs of this hearing. T. A. Wilson, Chairman."

The defendants excepted, assigned error and appealed to the Full Commission. The opinion of the Full Commission is as follows: "This was an appeal in apt time by the defendants from an award of the hearing Commissioner to the Full Commission and was in due course heard before the Full Commission, at which time the case was ably argued and presented by the learned counsel representing both the claimants and defendants, and the Commission listened with a great deal of interest to the able arguments, has examined the record, the evidence, and considered what other matters there were in the record pertinent to the issue, and after doing so are unable to find any reason to justify disturbing the findings of fact, conclusions of law and the award of the hearing Commissioner. Therefore, the Full Commission adopts the findings of fact, conclusions of law, and award of the hearing Commissioner as its own and directs that the appeal of the defendants be dismissed. Defendants will pay the cost of the hearing. Buren Jurney, Commissioner."

The defendants excepted, assigned error and appealed from the Full Commission to the Superior Court.

The following is the judgment of the Superior Court: "This cause coming on to be heard and being heard at this the February, 1940, Term of Superior Court of Robeson County for the trial of civil cases and being heard before his Honor, Henry L. Stevens, Jr., Judge presiding, on an appeal by defendants from an award in favor of plaintiffs from the full North Carolina Industrial Commission on the record and it appearing to the court and the court being of the opinion that there was and is sufficient competent evidence upon which the Commission could adopt their findings of fact and the court being of the opinion that the conclusions of law as adopted by the Commission justify the conclusions that the deceased, John M. Cloninger, was to the time of his death an employee of defendant, Ambrosia Cake Bakery Company, Inc. The court therefore adopts its conclusions of law, and it is therefore ordered, adjudged and decreed that the defendant shall pay to Mrs. John M. Cloninger, as guardian of the two minor dependent children, Daines Rutherford Cloninger and John Milton Cloninger, Jr., share and share alike, compensation at the rate of $15.00 per week for 350 weeks, plus payment of burial expense to the proper parties not to exceed $200.00 and payment of all hospital, nurse and medical expenses after statements of same have been submitted to and approved by the Industrial Commission. And further, that defendants pay the costs of this action. Henry L. Stevens, Jr., Judge Presiding."

The defendants excepted, assigned error and appealed to the Supreme Court.

The exceptions and assignments of error are as follows:

"1. That the court erred in adopting the findings of fact and conclusions of law of the Full Commission.

"2. That the court erred in adjudging that defendants pay to Mrs. John M. Cloninger, as guardian of the two minor, dependent children, D. R. Cloninger and John M. Cloninger, Jr., share and share alike, compensation at the rate of $15.00 per week for 350 weeks, plus payment of the funeral expenses to the proper parties not to exceed $200.00, and payment of all hospital, nurses and medical expenses, after statements of the same have been submitted to and approved by the North Carolina Industrial Commission, and that defendants pay the cost of this action.

"3. That the court erred in overruling the objections and exceptions of defendants to the award of the North Carolina Industrial Commission."

*McKinnon, Nance & Seawell for plaintiffs.*
*McLean & Stacy for defendants.*

CLARKSON, J. The question involved: Was there sufficient competent evidence before the Industrial Commission that deceased was an employee of the defendant, Ambrosia Cake Bakery, Inc., the appellant? We think so.

N. C. Code, 1939 (Michie), sec. 8081 (i), subsec. (f), is as follows: " 'Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

There is no dispute that John M. Cloninger sustained an injury by accident, which was the proximate cause of his death, on 31 August, 1939, about 2 miles from St. Pauls, between Fayetteville and Lumberton. He died 3 September, 1937. But defendants contend that he was not in the course of the employment when the injury by accident occurred. The defendants admitted that the Ambrosia Cake Bakery Company, Inc., of Greensboro, had five or more employees and had accepted the provisions of the Compensation Law and that the Liberty Mutual Insurance Company is the carrier. The defendants deny that Cloninger was an employee and contend that he was a jobber on a commission basis— an independent agent for defendant company, not a servant, agent or employee.

In *Lassiter v. Telephone Co.,* 215 N. C., 227 (230), we find: "It is established in this jurisdiction that the findings of fact made by the Industrial Commission, if supported by competent evidence, are conclusive on appeal and not subject to review by the Superior Court or this Court, although this Court may have reached a different conclusion if it

had been the fact finding body." *Lockey v. Cohen, Goldman & Co.,* 213 N. C., 356 (358-9); *Baxter v. Arthur Co.,* 216 N. C., 276 (280); *McNeill v. Construction Co.,* 216 N. C., 744 (745).

Among other findings of fact the hearing Commissioner found, which was sustained by the Full Commission and the court below: "That said bakery made certain payments upon Cloninger's truck account, his public liability insurance, and purchased business licenses in several towns in Cloninger's territory; that the city of Fayetteville license was bought in the name of 'Ambrosia Cake Bakery, Inc., Greensboro, N. C., Box 210,' 'to engage in the business of wholesale and retail bakery products'; that the town of Lumberton license was granted to Ambrosia Cake Bakery, Inc., for the privilege of . . . delivery of bakery products from truck.' That said Cloninger was not an independent agent or distributor."

A letter dated 27 July, 1937, from defendant Ambrosia Cake Bakery Company, Greensboro, N. C. (office manager), to John M. Cloninger, Fayetteville, N. C., is as follows:

"DEAR JACK: Your orders will have to be handled differently in the future. We will send your orders C.O.D. for the full amount—that is, without deducting the 22%, then at the end of the week we will figure up the 22% due you plus any difference *to make up the $25.00 salary.* We have released the shipment made to you on the 6th as per your telegram. We are enclosing our check for $9.81 which is the difference between the commission already allowed you and *the balance to make up the $25.00 salary.* Kindly endorse this check and return it to us to apply on this shipment that we allow to go to you open. This leaves a balance due us on this shipment of 52c plus 25c for *Social Security.* Kindly send me your *Social Security Number.*" (Italics ours.)

There was other evidence tending to show that Cloninger was an employee. There was evidence on the part of defendants to the contrary. It was a disputed fact and the Industrial Commission found the fact against defendant company. We have read the evidence with care and are persuaded that there was sufficient competent evidence to sustain the findings of the Industrial Commission.

In *Biggins v. Wagner* (S. D.), 245 N. W., 385, 85 A. L. R., 776, it is held: " 'The fact that a defendant in an automobile accident case carried liability insurance may, notwithstanding the incidental prejudice, be shown for its bearing on the issue whether the driver of the automobile was an employee of such defendant or an independent contractor.' At p. 784, the annotation is as follows: 'If an issue in the case is as to whether the plaintiff was a servant of the defendant or whether he was an independent contractor or servant of an independent contractor, evidence is admissible that the defendant carried indemnity insurance on his employees, including the plaintiff, such evidence having been

2—218

treated in some cases as having a tendency to negative the independence of the contract, or, in other words, as having a tendency to show that the plaintiff was considered by the defendant as his employee.' " *Rivenbark v. Oil Corp.*, 217 N. C., 592 (600).

We think the cases of *Creswell v. Publishing Co.*, 204 N. C., 380; *Bryson v. Lumber Co.*, 204 N. C., 665, and *Hollowell v. Dept. of Conservation and Development*, 206 N. C., 206, cited by defendants, distinguishable from the present action. The able brief of defendants and the forceful argument was persuasive, but not convincing. The record is full of distressing circumstances and shows a fine humane attitude and great kindness of the defendant company, by its president, E. P. Colby, to the dead man and his wife and children. Cloninger had been an employee of Colby in Florida for ten years before he came to North Carolina. In a long letter to the dead man, on 23 July, 1937, Colby writes: "I don't want you to quit under any circumstances without first letting me know the reason."

For the reasons given, the judgment is

Affirmed.

WINBORNE, J., dissenting: After careful consideration of the entire record I am unable to agree with the conclusion reached by the majority of the Court.

Reduced to its simplest terms, the case is this: The deceased was formerly employed in Florida and was there discharged for reasons not disclosed by the record. As a matter of kindness he was allowed to come to North Carolina and handle the defendant's goods, not as an employee, but as a jobber or distributor in the Fayetteville territory. The Commission finds this as a fact, but concludes as a matter of law that, by reason of certain correspondence "originating in the Greensboro office" which "tended to treat the deceased as another employer," he was, therefore, an employee at the time of his death. The conclusion is a *non sequitur*. This correspondence is fully explained in the record, and neither in effect nor in authority warrants the conclusion reached by the Commission. Employment was declined in this State, for reasons which the deceased fully understood. There is no evidence on the record that his status was ever changed from that of a jobber to that of an employee while working in North Carolina.

In any event, the case should go back to the Industrial Commission for further consideration for that the findings of fact are wholly inconsistent. Findings of fact nine to fourteen are opposed to findings of fact twenty-one and twenty-two. The former point unerringly to the fact that Cloninger was a jobber, buying and selling goods of the bakery, and not an employee of the bakery.

The findings of fact must be specific. Otherwise, the case will be remanded to the Industrial Commission. *Gowens v. Alamance County,* 214 N. C., 18, 197 S. E., 538.

When findings of fact are insufficient for proper determination of the questions raised, the proceeding will be remanded to the Industrial Commission for further consideration. *Farmer v. Lumber Co.,* 217 N. C., 158, 7 S. E. (2d), 376.

Likewise, where the findings of fact are inconsistent, the case should be remanded.

Moreover, the Commission put the conclusion of law upon a third ground: the correspondence "originating in the Greensboro office." That correspondence does not support the conclusion, as a matter of law, that Cloninger was an employee.

Facts found under misapprehension of the law will be set aside on the theory that the evidence should be considered in its true legal light. *McGill v. Lumberton,* 215 N. C., 752, 3 S. E. (2d), 324. See, also, *Bank v. Motor Co.,* 216 N. C., 432, 5 S. E. (2d), 318.

Conclusions of law reached upon misapprehension of legal effect of facts found should also be set aside.

Furthermore, the case of *Rivenbark v. Oil Corp.,* 217 N. C., 592, referred to in the majority opinion, has no bearing upon the facts in the case at bar.

Stacy, C. J., and Barnhill, J., concur in dissent.